IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-06-006-S-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| ANTONIO ESPINOZA-GALVAN | |
| Defendant. | |

This matter comes before the Court upon motion of the United States of America requesting that this Court review the release order issued on February 3, 2006 in the above-captioned matter. For the reasons set forth hereinafter, the Court determines that the order of release should be revoked and the Defendant detained pending trial in this matter.

## BACKGROUND

On January 4, 2006 a criminal complaint was filed against the Defendant alleging that he had illegally reentered the United States after having been previously deported to Mexico in violation of Title 8, Section 1326(a) and 1326(b)(2). Following the Defendant's initial appearance, the Government moved to detain the Defendant (Dkt. # 12), contending that the Defendant is a risk of

**Memorandum Decision and Order - Page** 1

flight and that no combination of conditions will adequately assure the presence of the Defendant at the trial presently scheduled for March 6, 2006.

The Bureau of Immigration and Customs Enforcement (ICE) previously filed administrative proceedings to remove the Defendant back to Mexico, and lodged a detainer with the U.S. Marshall pursuant to 8 C.F.R. § 287.7. The government contends that the detainer will cause the Defendant to go into custody of ICE if he were to be released by this Court and that he will therefore be unavailable for trial.

A hearing on this matter was held on January 10, 2006 before United States Magistrate Judge Mikel H. Williams. Following the hearing, Judge Williams issued a written decision concluding that the Defendant is not a flight risk and is entitled to be released pending trial. Docket No. 17. The United States thereafter filed a Request for Review under 18 U.S.C. § 3145(a). Docket No. 18.

## STANDARD ON REVIEW

The district judge's review of a magistrate judge's decision is *de novo*. *See*, e.g., *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985); *United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985); *United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989); *United States v. Fortna*, 769 F.2d 243, 251 (5th Cir. 1985); *United States v. Maull*, 773 F.2d 1479, 1481-82 (8th Cir. 1985) (en banc); *United States v.*

*Hurtado*, 779 F.2d 1467, 1481 (11th Cir. 1985). The district judge may therefore rely entirely on the record that was before the magistrate judge, or may conduct his or her own hearing on the matter. Here, the Court has chosen to rely on the record developed before Judge Williams. In reviewing that record, the Court has reviewed the entire file, and listened to the recording of the hearing.

The standard governing whether a Defendant is entitled to be released pending trial is set forth in the Bail Reform Act and requires that the trial court err in favor of release. As stated by the Ninth Circuit:

> [W]e bear in mind that federal law has traditionally provided that a person arrested for a noncapital offense shall be admitted to bail. Only in rare circumstances should release be denied. Doubts regarding the propriety of release should be resolved in favor of the defendant. Release pending trial is governed by the Bail Reform Act of 1984, which like its predecessor, the Bail Reform Act of 1966, mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required. (internal citations omitted).

*United States v. Motamedi,* 767 F.2d 1403,1405 (9th Cir. 1985). In order to establish that a Defendant is not entitled to release pending trial the government has the burden of proving by a preponderance of the evidence that the defendant is a flight risk and poses a danger to the community. *Id.* At 1407. In making this determination, the court must consider a number of factors, including the nature and circumstances of the offense charged; the weight of the evidence against the

**Memorandum Decision and Order - Page** 3

person; the history and characteristics of the person, including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, record concerning appearance at court proceedings; and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. §3142(g). Although the ultimate concern of the statute is to ensure that a defendant not be released if he poses a serious risk of flight or a danger to the community, the language of the statute focuses on whether there are conditions of release that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).  If no such conditions are available, the defendant must be detained; if such conditions can be imposed, the defendant must be released.

## THE PROCEEDINGS BELOW

At the hearing on January 10, 2006, the government called ICE Agent Kristina Denning, who testified that the Defendant was in the United States illegally. During an interview, the Defendant admitted that he had been previously deported from the United States and that he had illegally reentered the United States without permission. Agent Denning also testified, based on her training and

**Memorandum Decision and Order - Page** 4

experience, as to what administrative action would be taken by ICE if the Defendant was placed on pretrial release by the Court.[1] The government also introduced into evidence the Pretrial Services Report, which stated that the Defendant was 41 years of age having been born in Mexico. The Defendant had been deported on two prior occasions, February 3, 1998 and March 17, 2003. The Defendant has four children, all of whom are U.S. citizens. His parents live in Mexico. The Defendant has one prior felony conviction, for wilful child cruelty in 1994 in Fresno, California. He was sentenced to 300 days in jail and 36 months of probation. The report concluded by noting that Defendant's ties to the community had not been confirmed and recommended detention based on risk of flight.

The defense called two witnesses at the hearing. The first, Solomon Lugo testified he is the pastor of the The Light of the World Church, which has a branch in Nampa. Pastor Lugo had recently taken over as pastor and had only known the Defendant for the last 3 months.[2] Pastor Lugo testified that the Defendant

---

[1] The Court recognizes that on cross examination Agent Denning clarified that Defendant would have the right to appear before an immigration judge who would have the authority to grant bond on his immigration detainer given that he had never been convicted of an aggravated felony. However, Defendant is charged with violation of 8 U.S.C. § 1326(b)(2) which addresses aliens who have reentered following removal subsequent to conviction of an aggravated felony. In any event, whether the Defendant would be subject to bond on his detainer or not is not for this Court to determine and Denning's statements are irrelevant to its decision.

[2] Pastor Lugo testified that he had known Defendant several years ago in California as fellow church members, but the extent of their relationship and how well he knew Defendant was not explored.

**Memorandum Decision and Order - Page** 5

was an active member in the church and helps with construction and repairs. The Defendant and his family attend church each day for services.

The Defendant's second witness, his sister-in-law, Maricela Mendoza testified that she works as a dental technician for the Terry Reilly Health Clinic and has known the Defendant for the last 16 years, starting in Fresno, California before the family members relocated to Idaho. She stated that the Defendant was primarily responsible for providing and caring for the daily needs of his family since his wife suffers from debilitating depression. Ms. Mendoza described the Defendant as a religious and hard working man who supported his family as a mechanic.  Ms. Mendoza stated the Defendant does not drink or use drugs.  Ms. Mendoza volunteered to serve as a third party custodian if the Defendant were to be released by the Court.

In addition, a number of individuals appeared at the detention hearing to support the Defendant.  These included, three members of his church, the Defendant's wife Maria, his mother-in-law, brother-in-law, and his four children.

Applying the factors set forth in 18 U.S.C. § 3142 (g) to these facts, Judge Williams concluded that the Defendant was not a risk of flight.  In so holding, Judge Williams relied upon (1) the Defendant's many family ties to this area, including all of his immediate family, (2) the fact that the Defendant's sole prior

**Memorandum Decision and Order - Page** 6

felony conviction is almost 12 years old, and (3) there was no record of the Defendant ever missing a prior court hearing.

On the other hand, Judge Williams did note that the government's case is strong, but further observed that this is one of the least important factors to consider in the analysis. *United States v. Honeyman,* 470 F.2d 473 (9th Cir. 1972). He also gave little weight to the Defendant's prior history of having been taken into custody for a probation violation, because that occurred after he had reentered the United States and was located here in Idaho and then sent back to California to complete his sentence.  Judge Williams also recognized that the Defendant has disobeyed the prior orders of immigration authorities when he was removed back to Mexico and was told not to reenter the United States illegally, but concluded that conditions of release could be fashioned that would adequately assure the presence of the Defendant at trial.

In reaching this conclusion, Judge Williams' considered, but rejected, the Government's argument that because of the ICE Detainer, the Defendant will be immediately deported if he is released pending trial in this matter.  The Court disagrees with the Magistrate Judge's conclusion that this factor cannot be considered in determining whether the Defendant is entitled to pre-trial release and that ICE is not required to deport the Defendant if he is granted pre-trial release.

**Memorandum Decision and Order - Page** 7

The Court also concludes upon a *de novo* review of the record that no conditions of release can be imposed which will ensure his appearance.

## ANALYSIS

Under the provisions of 8 U.S.C. §§ 1226(c), ICE is required to detain during removal proceedings any deportable alien who has been convicted of certain denominated crimes. *Demore v. Kim*, 538 U.S. 510, 517-518 (2003). Specifically, the statute provides that:

> The Attorney General shall take into custody any alien who–
>
> > (A)  is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
> >
> > (B)  is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
> >
> > (C)  is deportable under section 1227(a)(2)(A)(I) of this title on the basis of an offense for which the alien has been sentence(d) to a term of imprisonment of at least 1 year, or
> >
> > (D)  is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

The Supreme Court, in evaluating a due process challenge to the mandatory

**Memorandum Decision and Order - Page** 8

detention provisions of the statute, determined that § 1226(c) was adopted "against a backdrop of wholesale failure by the INS [ICE's predecessor] to deal with increasing rates of criminal activity by aliens," *id.* at 517, and in the face of evidence that "one of the major causes of the INS's failure to remove deportable criminal aliens was the agency's failure to detain those aliens during their deportation proceedings." *Id.* at 518.   In response to this concern, Congress adopted § 1226(c), which provides that deportable aliens convicted of the crimes enumerated in the statute are not eligible for the more lenient release provisions of 8 U.S.C. § 1226(a), but must be detained pending a determination of their removability. *Id.* at 521.

    Thus, the Attorney General is required to take into custody any alien who has been convicted of one of the crimes enumerated in 8 U.S.C. § 1226(c)(1), and to do so immediately upon his release on that charge, even if he is released on parole, supervised release, or probation.   If the Defendant thereafter returns to the United States illegally, he is still subject to the same mandatory provisions of §1226(c)(1), and the Attorney General is required to take him into custody until his removal can be arranged.   Whether he is charged with another crime, like the illegal re-entry charge which the Defendant faces here, is irrelevant to the statute. He is subject to the mandatory detention provisions because he has been convicted

**Memorandum Decision and Order - Page** 9

of a crime enumerated in the statute, he has been released from custody on that conviction, and there are removal proceedings pending against him.[3]

In this light, the decision to grant the Defendant pre-trial release on these charges is irrelevant to the Attorney General's obligation to detain the Defendant. He is subject to mandatory detention whenever his presence in the United States is noted by the Attorney General, regardless of whether he is charged with Illegal Re-entry, and regardless of whether he is granted pre-trial release on those charges. In fact, it appears that the only time that ICE cannot take custody of an alien is when the alien is imprisoned in connection with another charge. In that case, ICE lodges an immigration detainer, as it has here, so he will be immediately transferred to ICE custody upon his release.

On the other hand, there is a harsh consequence which flows from a decision to grant the Defendant pre-trial release. Once the Defendant is released and returned to ICE custody under § 1226(c)(1), he will face deportation which must take place within 90 days. 8 U.S.C. § 1231(a)(1)(B)(iii). The Government

---

[3]The Defendant argues that the mandatory detention provisions of § 1226(c) do not apply to him because he was convicted in 1994, which was prior to the effective date of the statute. However, the Defendant did not complete his sentence until his release from custody in March of 2003 because of his deportation, subsequent re-entry, and a resulting probation violation. The statute, by its terms, applies to individuals "released" after October 9, 1998. IIRIRA § 303(b). Accordingly, the Court determines that the Defendant is subject to the provisions of § 1226(c).

**Memorandum Decision and Order - Page** 10

contends that the established track record of ICE is to remove the deportable alien as soon as possible. Counsel for the Government cites four cases from this District where a defendant released under circumstances similar to those presented here was immediately deported and never returned for trial. Because the Defendant here has already acknowledged that he is deportable and not eligible for relief from deportation, it would appear likely that the same result will occur here.[4] Thus, the Government argues that a decision to permit pre-trial release guarantees that the Defendant will never stand trial on the pending charges.

There is a temptation to ignore the Government's concern that a decision to release the Defendant means that he will be deported and never stand trial. It is, after all, a self-inflicted wound, since it is the United States Government that is seeking both to prosecute and to deport the Defendant. However, the Court is persuaded that this view has only a facial appeal. The real issue here is not the wisdom of the government's immigration policy. Indeed, Congress has exceptionally comprehensive power in the immigration area, and the exercise of that power is largely immune from judicial scrutiny. *See Fiallo v. Bell*, 430 U.S. 787, 792 (1977). Rather, the real question is whether the statutes passed by

---

[4] At oral argument Defendant suggested that he was exploring a possible grounds for challenging deportation. However, there is nothing in the record which would permit the Court to conclude that there is any likelihood that the Defendant will be successful in avoiding removal.

**Memorandum Decision and Order - Page** 11

Congress dictate that a defendant be released under the Bail Reform Act if the consequence of that decision will be to ensure a defendant never stands trial. The Court concludes that this question must be answered in the negative.

The resolution of this issue turns on the following language of the Bail Reform Act.

> If after a [detention hearing] the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial.

18 U.S.C. § 3142(e). Thus, the focus of the statute is not on whether the defendant is a flight risk, but on whether conditions of release will reasonably assure the defendant's appearance for further proceedings. This suggests that the Court can, and should, adopt a practical view of the defendant's circumstances, in which the primary concern is ensuring that the defendant is available to stand trial. Viewed in this light, it is appropriate for a judge, in making pre-trial release decisions, to consider factors such as congressional enactments which limit and direct how the executive branch handles the removal of illegal aliens, even if those factors are beyond the Defendant's control and well within the Government's control.

When the Court considers the effect of the ICE detainer and the Defendant's probable removal, in conjunction with the Defendant's other circumstances, the

**Memorandum Decision and Order - Page** 12

case becomes quite easy.  The Defendant has substantial ties in this community, since his four minor children reside here.  He regularly attends church in this area and has a family member who is willing to act as a third party custodian.

On the other side of the ledger, the Defendant's parents and possibly his wife reside in Mexico.  He owns no property here.  He is not able to maintain lawful employment because of his alien status.   Although there is no evidence that the Defendant has failed to appear for other court proceedings, this is of limited significance since there is also no evidence that he has ever been released pending trial.  The case against the Defendant is very strong, since the Defendant has admitted that he was previously deported following his conviction of a serious felony.  Most significantly, the Defendant (1) entered this country illegally sometime prior to September of 1990 when he was arrested in California on domestic battery charges, (2) was deported in 1998, (3) illegally re-entered this country sometime prior to October of 2002 when he was arrested on a California warrant, (4) was deported on March 17, 2003, and (5) again re-entered this country illegally sometime prior to December, 2005 when he was incarcerated in Canyon County, Idaho.  This history indicates that the Defendant has shown both an inclination to ignore the immigration laws of the United States and an ability to avoid detection while doing so. Furthermore, the Court, in considering the nature

**Memorandum Decision and Order - Page** 13

of the offense may also consider the possible penalty for the offense. *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). In this case, the maximum statutory penalty if convicted of the charged offense is 20 years imprisonment. Even if it is determined that he had not been previously convicted of an aggravated felony, the maximum statutory penalty for a non-aggravated felony under § 1326(b)(1) is 10 years of imprisonment.

In balancing all of these factors, the Court concludes by a preponderance of the evidence that there are no conditions or combination of conditions that will reasonably assure the appearance of the Defendant for trial. As discussed above, a decision by the Court to grant the Defendant pre-trial release will result in his being detained by ICE authorities, his prompt removal to Mexico and his never standing trial. Moreover, even if ICE elects to ignore the provisions of 8 U.S.C. § 1226 and foregoes detaining the Defendant, it seems unlikely that he would choose to remain here and stand trial. If released, the Defendant would have three options: (1) remain here to stand trial and face the likelihood that he will be convicted, sentenced to prison, and then deported to Mexico, (2) leave the jurisdiction and return to Mexico immediately to avoid prosecution, or (3) remain in the jurisdiction but revert to his prior lifestyle of avoiding detection by the authorities and thereby avoid prosecution and deportation. Subjecting these outcomes to a

**Memorandum Decision and Order - Page** 14

simple cost-benefit analysis reflects that the first of these three options is the least likely course that a rational defendant would follow.

For the foregoing reasons, the Court, after conducting its own *de novo* review, concludes that there are no conditions or combination of conditions which the Court can fashion that will reasonably assure the defendant's appearance at trial. Therefore, 18 U.S.C. § 3142(e) mandates that the Defendant be detained pending trial.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the Government's Request for Review of Release Order (Docket No. 18) docketed as a Motion for Detention is GRANTED.

IT IS FURTHER HEREBY ORDERED that, for the reasons stated above, Defendant be detained prior to trial without prejudice.

IT IS FURTHER HEREBY ORDERED that Defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

IT IS FURTHER HEREBY ORDERED that Defendant be afforded reasonable opportunity for private consultation with his counsel.

**Memorandum Decision and Order - Page** 15

IT IS FURTHER HEREBY ORDERED that the director of the correctional facility in which Defendant is confined shall make Defendant available to the United States Marshal for the purpose of appearance in connection with a court proceeding.



DATED: **February 24, 2006**

_____
B. LYNN WINMILL
Chief Judge
United States District Court